IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2002

## ANDRADE BRUCE WILLIAMS, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 95-C-2810     Seth Norman, Judge**

-------

**No. M2002-00357-CCA-R3-PC - Filed October 2, 2002**

-------

Petitioner appeals the denial of his petition for post-conviction relief. He was originally convicted of felony murder and attempted especially aggravated robbery and received an effective life sentence. He now contends he received ineffective assistance of counsel at his jury trial. We conclude otherwise and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Andrade Bruce Williams, Jr.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kymberly Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Petitioner was convicted by a jury in Davidson County of felony murder and attempted especially aggravated robbery and received concurrent sentences of life imprisonment and ten years, respectively. His convictions and sentences were affirmed on direct appeal. *See* State v. Andrade Bruce Williams, Jr., C.C.A. No. 01C01-9803-CR-00104, 1999 Tenn. Crim. App. LEXIS 329 (Tenn. Crim. App. Apr. 8, 1999, at Nashville), *perm. to app. denied* (Tenn. 1999). He timely sought post-

conviction relief, alleging ineffective assistance of trial counsel. The petition was denied;[1] this appeal followed.

## FACTS

We summarize the pertinent facts from our opinion in the direct appeal.

> Around 9 p.m. on October 2, 1998 [sic],[2] Tonya Wynn, a resident of 6th Avenue North in Nashville, was "sitting [on the steps of her residence] and waiting on the light company to come and cut [her] lights back on." While awaiting the utility company's arrival, she observed the appellant park a vehicle in front of her house. Ms. Wynn was familiar with the appellant because he dated her cousin, Cynthia Malone. When the appellant got out of the vehicle, he was carrying a ski mask and a gun. She described the appellant's clothing as "a black khaki shirt and some black khaki pants." The appellant walked around the corner out of her sight into a vacant lot toward the 7th Avenue Market. Immediately thereafter, Ms. Wynn heard gunfire. A few minutes later she saw the appellant return to the vehicle and leave. Ms. Wynn recorded the license plate number and furnished it to the police
>
> Officer John Batty of the Nashville Metro Police Department along with his partner Officer Pat Gibson arrived at the scene to find Darel Douglas lying "semi-unconscious" in the doorway of the market. The victim told Officer Gibson that "he was near the phone booth . . . and somebody approached him and told him to give him the f///--- money. When he told him he didn't have any [money], then he was shot." The victim stated to Officer Gibson that he did not recognize his assailant who was wearing a ski mask. The victim was acquainted with Officer Gibson and asked the officer to accompany

---

[1] After petitioner had testified at length on cross-examination at the post-conviction hearing, the prosecuting attorney asked him why he told the investigator in his statement that he wanted the victim's money, which was contrary to his post-conviction testimony. Petitioner claimed he did not understand the prosecuting attorney's question. The post-conviction court concluded he understood the question and was refusing to answer. The post-conviction court at that time abruptly announced, "The petition is denied." A panel of this court remanded this matter for findings of fact and conclusions of law. *See* Andrade Bruce Williams v. State, No. M2001-00509-CCA-R3-PC (Tenn. Crim. App. Dec. 17, 2001) (order). The post-conviction court then filed findings and conclusions addressing the merits of petitioner's claims. The abrupt termination of the post-conviction proceeding is not an issue in this appeal. Although we do not condone or agree with the abrupt termination, there is no indication petitioner intended to present further testimony. Thus, we are unable to conclude petitioner was prejudiced by this action.

[2] The correct year was 1995, not 1998.

him to the hospital. The victim died at 1 p.m. the following day. The autopsy report established that the victim was shot three times with bullet wounds to the abdomen, left hip and back.

The investigation developed the appellant as a suspect in the shooting. On October 3, 1998 [sic], the detective spoke with the appellant at his mother's home in Nashville. The following day, the appellant voluntarily came to the police station. At the station, he was advised of his Fifth Amendment rights which he acknowledged by signing a waiver of rights form. The appellant's first statement was recorded on audiotape and played for the jury.

In his first statement, the appellant explained that Tony Fitzgerald had robbed Darel Douglas and that he only drove the getaway car. The police searched for a Mr. Fitzgerald but could not locate anyone by that name. Through their investigation, the officers concluded that the robbery and murder involved only one assailant. The officers again spoke with the appellant on October 5, 1998 [sic], at his place of employment. The officers explained to the appellant that Tony Fitzgerald did not exist and that they wanted to conduct a further interview. The appellant admitted that Tony Fitzgerald was fictitious.

Again, on October 5, the appellant was **Mirandized** and signed a waiver of rights form. He stated that on October 2, he borrowed a vehicle from a friend and went to the 7th Avenue Market. Upon this occasion, the victim was not present. However, the second time Douglas was present and the appellant admitted to holding the gun on the victim and telling him to "set it [money] out." The victim threw the money down. The appellant stated that he only wanted to shoot him in the leg because he "knew" the victim carried a gun; however, his hand "jumped" and he shot the victim in the stomach. Then, he shot him three more times. The appellant related that he was scared of Douglas.

The appellant testified that one week prior to the shooting, he and Douglas had argued at a car wash. Douglas had placed a gun to his head and threatened to kill him if he returned to "Salem Town." The appellant did not report this incident to the police because he was afraid of retaliation from Douglas. Because of this incident, the appellant decided that he wanted to "scare him [Douglas] back. . . . All my plans was to do was just rob him, just scare, not to shoot or kill him . . ."

On cross-examination, the appellant admitted that he began his preparations for the robbery five hours in advance by securing a vehicle, obtaining a gun, and cutting holes in the ski mask. He admitted that he shot the victim three times including once in the back. The appellant stated that he was only trying to shoot Douglas before Douglas shot him. In his statements to the police, the appellant never said that he saw a gun. However, at trial, he claimed that Douglas had a gun. No weapon was found by the police at the crime scene. The appellant admitted that after he had shot Douglas twice, Douglas began running away. The appellant then shot him in the back. "I was just getting him back for what he did to me."

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends he was deprived of effective assistance of counsel due to trial counsel's failure to do the following: (1) seek dismissal of the defective indictment; (2) make an offer of proof regarding evidence of the victim's violent reputation; (3) object to prosecutorial misconduct during final argument; and (4) object to the jury charge.

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Should the petitioner fail to establish either factor, the petitioner is not entitled to relief. Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner is not entitled to the benefit of hindsight; the petitioner may not second-guess a reasonably based trial strategy; and the petitioner may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see* Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *See* Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

## ANALYSIS

### A. Defective Indictment

Petitioner contends trial counsel was ineffective by not seeking dismissal of the indictment due to its omission of the word "unlawful" in the felony murder count. The indictment alleged the petitioner "on the third day of October, 1995... and before the finding of this indictment, recklessly did kill Darel Rodriguez Douglas, during the perpetration of or attempt to perpetrate robbery, in violation of Tennessee Code Annotated § 39-13-202, and against the peace and dignity of the State of Tennessee." The omission of the word "unlawful" was not fatal to the indictment. The reference to the felony murder statute gave the petitioner sufficient notice of the charge. *See* State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999). Trial counsel was not deficient in failing to seek dismissal on this basis, nor was petitioner prejudiced.

Petitioner next contends trial counsel was ineffective in not seeking dismissal of the indictment based upon its unnecessary allegation that he "recklessly killed the victim," whereas the *mens rea* of "recklessly" was no longer a requirement of the offense of felony murder. *See* Tenn. Code Ann. § 39-13-202(a)(2) (Supp. 1995). Trial counsel explained that this simply added another element that the state had to prove; therefore, he saw no reason to seek dismissal of the indictment. Although the trial court was not required to charge the reckless *mens rea*, it did so, thereby creating an additional element the state had to prove. The inclusion of the word "recklessly" in the indictment was mere surplusage. State v. Kenneth A. Adams and Jeremiah A. Leavy, C.C.A. No. 02C01-9812-CC-00377, 1999 Tenn. Crim. App. LEXIS 1296, at *12 (Tenn. Crim. App. Dec. 21, 1999, at Jackson), *perm. to app. denied* (Tenn. 2000); *see also* State v. Hopper, 695 S.W.2d 530, 535 (Tenn. Crim. App. 1985) (holding that allegation of the element of "deliberation" in a felony murder indictment was mere surplusage; thus, the state was not required to prove this allegation). The inclusion of the reckless *mens rea* in the indictment was to the petitioner's advantage. Trial counsel was not deficient, nor was petitioner prejudiced.

### B. Reputation Evidence

Petitioner contends trial counsel was ineffective in failing to make an offer of proof relating to the victim's violent reputation. On direct appeal, this court concluded the issue of reputation evidence was waived due to trial counsel's failure to make an offer of proof. Andrade Bruce Williams, Jr., 1999 Tenn. Crim. App. LEXIS 329, at *12. However, we also concluded the victim's reputation was irrelevant to any issue in the case. *Id*. at *13. Thus, had an offer of proof of the victim's violent reputation been made, this court would still have affirmed the trial court's rejection of such evidence. Petitioner was not prejudiced by trial counsel's failure to make an offer of proof.

### C. Prosecutorial Misconduct

Petitioner contends the prosecuting attorney in her final argument improperly interjected her personal opinions and her own definition of "reckless," and trial counsel failed to object or raise

these issues on direct appeal. During final argument, the prosecuting attorney stated the defendant preselected the victim, which she found "very frightening and very chilling." With regard to petitioner's testimony that he did not intend to kill the victim, she stated, "I don't believe that." Finally, the prosecuting attorney stated that "if firing a gun into a human body three times is not reckless, then I don't know the definition of the term." The post-conviction court concluded these remarks were, at most, harmless.

The prosecuting attorney's expression of her personal opinion that she did not believe the petitioner's testimony was clearly improper. *See* Tenn. Sup. Ct. R. 8, **Code of Professional Responsibility**, DR 7-106(C)(4). The remaining remarks present a closer question. Nevertheless, we are confident that none of the remarks inured to the prejudice of the petitioner. In short, had there been objections and a consideration of this issue on direct appeal, petitioner would not have been successful in securing a new trial. *See* State v. Middlebrooks, 995 S.W.2d 550, 559 (Tenn. 1999). Accordingly, petitioner has not established prejudice.

## D. Jury Instructions

Finally, petitioner argues the jury instructions erroneously required the state to prove the *mens rea* of "reckless" for felony murder. He contends the jury was misled by this instruction, and trial counsel should have objected. As previously stated, the instructions requiring the state to prove the unnecessary *mens rea* of "reckless" was to petitioner's advantage. Petitioner has not established any deficiency by trial counsel nor prejudice.

## CONCLUSION

Based upon our review of the record, we are unable to conclude the petitioner received ineffective assistance of counsel. Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE